**[J-34A-2020, J-34B-2020, J-34C-2020 and J-34D-2020] [MO: Baer, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| IN RE: ADOPTION OF K.M.G. | : | No. 55 WAP 2019 |
| | : | |
| | : | Appeal from the Order of the |
| APPEAL OF: T.L.G., MOTHER | : | Superior Court entered September |
| | : | 13, 2019 at No. 580 WDA 2018, |
| | : | affirming the Decree entered March |
| | : | 5, 2018 in the Court of Common |
| | : | Pleas of McKean County at No. 42- |
| | : | 17-0239. |
| | : | |
| | : | SUBMITTED:  April 16, 2020 |
| | | |
| IN RE: ADOPTION OF: A.M.G. | : | No. 56 WAP 2019 |
| | : | |
| | : | Appeal from the Order of the |
| APPEAL OF: T.L.G., MOTHER | : | Superior Court entered September |
| | : | 13, 2019 at No. 581 WDA 2018, |
| | : | affirming the Decree entered March |
| | : | 5, 2018 in the Court of Common |
| | : | Pleas of McKean County at No. 42- |
| | : | 17-0240. |
| | : | |
| | : | SUBMITTED:  April 16, 2020 |
| | | |
| IN RE: ADOPTION OF S.A.G. | : | No. 57 WAP 2019 |
| | : | |
| | : | Appeal from the Order of the |
| APPEAL OF: T.L.G., MOTHER | : | Superior Court entered September |
| | : | 13, 2019 at No. 582 WDA 2018, |
| | : | affirming the Decree entered March |
| | : | 5, 2018 in the Court of Common |
| | : | Pleas of McKean County at No. 42- |
| | : | 17-0241. |
| | : | |
| | : | SUBMITTED:  April 16, 2020 |
| | | |
| IN RE: ADOPTION OF J.C.C. | : | No. 58 WAP 2019 |
| | : | |
| | : | Appeal from the Order of the |
| APPEAL OF: T.L.G., MOTHER | : | Superior Court entered September |
| | : | 13, 2019 at No. 583 WDA 2018, |

| | |
|---|---|
| : | affirming the Decree entered March |
| : | 5, 2018 in the Court of Common |
| : | Pleas of McKean County at No. 42- |
| : | 17-0242. |
| : | |
| : | SUBMITTED:  April 16, 2020 |

## CONCURRING OPINION

**JUSTICE DOUGHERTY**                              **DECIDED:  NOVEMBER 10, 2020**

I fully join the majority opinion, as well as the concurring opinion of Chief Justice Saylor. I write separately to underscore my respectful disagreement with certain notions expressed by Justice Wecht in his concurring and dissenting opinion.

Though I agree, consistent with this Court's prior jurisprudence, the right to representation of the child's legal interests is a non-waivable right of the child which risks being irreversibly overlooked if counsel advances a child's best interests without regard for the child's preference, and I appreciate Justice Wecht's effort to protect an interest courts have confronted with varying consistency in these sensitive proceedings, I nevertheless view his approach as problematic within the context of the legal representation of children, particularly in termination of parental rights proceedings.

My learned colleague correctly notes that "[e]ffective representation of a child requires, at a bare minimum, attempting to ascertain the client's position and advocating in a manner designed to effectuate that position." Concurring and Dissenting Opinion, slip op. at 15, *quoting In re K.R.*, 200 A.3d 969, 986 (Pa. Super. 2018). Yet I disagree that our law requires an appellate court's *sua sponte* scrutiny of the record in a termination of parental rights proceeding to determine the adequacy with which the child's attorney demonstrated he fulfilled these duties. Apparently, we all recognize the discharge of those duties requires varying approaches and time commitments depending upon the unique needs, capacities, and willingness of the individual child in every case — and our law has

[J-34A-2020, J-34B-2020, J-34C-2020 and J-34D-2020] [MO: Baer, J.] - 2

adopted no guidelines or standards with which to assess the adequacy of child's counsel's representation which, likewise, will necessarily vary with every individual case.

But I do not believe the absence of a ruling requiring the efforts of child's counsel be placed on the record allows the child's attorney to otherwise derogate his duties to his client. *See id.* at 16. While I would emphatically agree an attorney must not proceed with a conflict of interest through a hearing to involuntarily terminate a client's parent's rights, an attorney must not proceed with a conflict of interest at **any** time. An evidentiary hearing regarding the termination of a parent's rights will generally not adequately reflect how any party's counsel ascertained a client's position. Counsel for a child, even if acting in a dual role as GAL, is not the court's witness, but is bound by the court's evidentiary rules, and as we have emphasized, owes a duty only to the child — the same duties of competence, zealous advocacy, and confidentiality as any other attorney's duty to any other client.[1] *See In re T.S.* 192 A.3d 1080, 1087 (Pa. 2018) ("The statutory right [to counsel] under Section 2313(a) belongs to the child, not the parent."). As the non-moving party in this proceeding, the children's attorney was charged with representing the children's best and legal interests as he understood them; thus if, in his assessment, the evidence proffered by other parties sufficiently established a basis for the outcome consistent with his clients' interests, a fair exercise of judgment would be to refrain from providing more. I thus view the proposed added layer of scrutiny of what counsel did not do in this case, the questions

---

[1] I emphasize, however, where the child's attorney acting in a dual role receives information the child provided in confidence, which the attorney would otherwise use to advance the child's interests in a manner at odds with the child's preferences, it is unequivocally the imperative duty of the child's attorney to inform the court of a conflict of interest and request separate appointment of a GAL. *See* Pa.R.P.C. 1.7. ("lawyer shall not represent a client if the representation involves a concurrent conflict of interest"); Pa.R.J.C.P. 1154 cmt. ("[T]he guardian *ad litem* for the child may move the court for appointment as legal counsel and assignment of a separate guardian *ad litem* when, for example, the information that the guardian *ad litem* possesses gives rise to the conflict and can be used to the detriment of the child.").

he did not ask, the witnesses he did not call, or the arguments he did not make, at a hearing in which he was not required to expound upon his efforts to adequately represent his clients, as a tenuous basis for reversal.

To the extent the concurring and dissenting opinion suggests the Adoption Act requires the child's preferences to be factored into consideration of the "developmental, physical and emotional needs and welfare of the child" pursuant to Section 2511(b), *see* Concurring and Dissenting Opinion, slip op. at 18 n.59 (quoting 23 Pa.C.S. §2511(b)), I caution courts and practitioners from equating these principles. Although this Court has developed that "the determination of the child's 'needs and welfare' requires consideration of **the emotional bonds** between the parent and child[,]" *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (emphasis added), we have not developed how the child's "needs and welfare" are served by their preferences. Indeed, the jurisprudence in this area more clearly indicates a recognition of children's preferences and conflicting loyalties **not** serving their needs and welfare.[2] *See id.* at 268, *quoting In re K.K.R.-S.,* 958 A.2d 529, 535 (Pa. Super. 2008) ("Even the most abused of children will often harbor some positive emotion towards the abusive parent."). I further caution against adopting such an equivalency where, as is the case here, some pieces of testimony, such as those related in the concurring and dissenting opinion, demonstrate witnesses observed the children expressing attachment to their mother, while yet other countervailing testimony by the same witnesses, not incorporated into that same analysis, also demonstrate evidence of a bond the children share with their pre-adoptive caregiver, and the harm the children suffered when their

---

[2] Additionally, I note that a showing of the "developmental, physical and emotional needs and welfare of the child" appears well within the ambit of the GAL's function to inform the court of what "is best for the child's care, protection, safety, and wholesome physical and mental development[,]" *see* Pa.R.J.C.P. 1154 cmt., and is therefore perhaps more appropriately considered within the context of a child's best interests, rather than as a potentially conflicting preference.

mother, who had unlimited ability to visit with the children, failed to call, show for visits, or otherwise remain in contact with the children for weeks at a time.[3] Furthermore, by assimilating consideration of the child's preferences within the grounds for involuntary termination under Section 2511(b), the rule proposed in the concurring and dissenting opinion would reassign the burden for proving the grounds are met from the party seeking termination — here, and in most cases, the county children and youth agency — to a non-moving party whose duty is solely to the child. *See*, *e.g.*, *In re E.M.*, 620 A.2d 481, 484 (Pa. 1993) ("[i]n a proceeding to involuntarily terminate parental rights, the burden of proof is upon the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so").

Consequently, while I am well aware of the problem — *i.e.*, where a child's attorney adds little evidence to the record, it may not be possible to discern from the record how the attorney advanced the child's legal interests — I counter that requiring review of counsel's efforts to ascertain the child's wishes is not so simple, and scrutiny of the

---

[3] *See, e.g.*, N.T., 2/18/2018 at 39 ("the kids have a really good bond with [their uncle]"), 40 (referencing "mom's lack of trying or lack of being involved"), 65 ("kids are happier [with their uncle]; they're not as stressed out as they were [living with their mother]"), 67 (Children "really bonded" to their uncle and his wife), 74 (mother's "instability has caused a lot of distress on the part of the children . . . when they were expecting her to call and tell them good night she wouldn't call or she wouldn't show up for visits – it caused a lot of stress for the children – and that instability is just not a concern where they're at [with uncle]"), 80 (mother's contact sporadic despite caregiver's open-door policy), 107 (children thriving in environment they're in and "fully bonded" with uncle and his wife; severing that bond would be more detrimental than severing parental bond with mother). In addition, I view consideration of any testimony from the children's maternal grandmother, *see* Concurring and Dissenting Opinion at 6-7, or any characterization of it as "credited," *see id.* at 23, as improper due to the orphans' court's rejection of that testimony. *See* Orphan's Court Memorandum and Order dated 3/16/2018 at 7.

particular array of strategies used by child's counsel should not controvert the focus of

the proceeding.[4]

---

[4] I do not support "dispensing" with a requirement that counsel should make a record in a manner that suits the circumstance. *See* Concurring and Dissenting Opinion, slip op. at 21 n.64 (Wecht, J.). Indeed, I join the majority's opinion in full, including its recognition that, depending upon the circumstances, it may be a helpful practice for child's counsel to place certain information on the record, which can aid appellate review. *See* Majority Opinion, slip op. at 27. I would not endorse the expansive review proposed by Justice Wecht in the absence of rule-making with regard to the representation of children in termination proceedings or legislative pronouncement statutorily incorporating such requirements into the proceeding under the Adoption Act.