2026 PA Super 128

| | | |
|---|---|---|
| IN THE INTEREST OF: R.D., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.D., MOTHER | : : : : : : : | |
| | : | No. 1661 EDA 2025 |

Appeal from the Order Entered June 2, 2025
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0000035-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: R.D., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.D., MOTHER | : : : : : : : | |
| | : | No. 1662 EDA 2025 |

Appeal from the Decree Entered June 2, 2025
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000469-2023

BEFORE:  STABILE, J., NICHOLS, J., and SULLIVAN, J.

OPINION BY NICHOLS, J.:                                    **FILED JUNE 18, 2026**

Appellant J.D. (Mother) appeals from the order changing the dependency goal for R.D. (Child) to adoption and the decree terminating her parental rights to Child.[1]  We affirm the goal change order, vacate the termination decree, and remand with instructions.

_____

[1] R.D. is also identified in the caption of the adoption docket as "Baby Girl [D.]"  ***See*** Docket No. 469-2023, Trial Ct. Order, 6/2/25.

By way of background, Child was born in January of 2022 and tested positive for cocaine at birth. **See** Trial Ct. Op., 8/15/25, at 2. Shortly after her birth, the Philadelphia Department of Human Services (DHS) obtained an order of protective custody and placed Child in the care of S.W. (Foster Mother), where Child presently remains in placement. **See id.**; **see also** N.T., 6/2/25, at 4. Child was adjudicated dependent on February 8, 2022. **See** Trial Ct. Op., 8/15/25, at 2. Over the following two years and nine months, the trial court held eight permanency review hearings in Child's case. **See id.** at 3-6. The trial court appointed Neal M. Masciantonio, Esq., as guardian *ad litem* (GAL) for Child on January 14, 2022, and then subsequently appointed James J. DeMarco, Esq., as GAL for Child on June 7, 2022. Attorney DeMarco appeared as GAL for Child for the remainder of Child's dependency proceedings. **See, e.g.,** Dependency Ct. Order, 7/12/22; Dependency Ct. Order, 4/15/22.

At a permanency review hearing on November 12, 2024, the trial court found that Child was "developmentally on target" and "doing well." Dependency Ct. Order, 11/12/24, at 2. The trial court made similar findings in prior permanency review orders. **See** Dependency Ct. Order, 7/2/24, at 1; Dependency Ct. Order, 3/7/23, at 1.

On November 14, 2024, DHS filed a petition for involuntary termination of parental rights (TPR) to Child. The trial court heard the petition on June 2, 2025. Mother was not present at the TPR hearing. **See** N.T., 6/2/25, at 4-5. However, Mother's counsel, Lawrence J. O'Connor, Esq., was present and

conceded that "reasonable efforts were probably made" to serve Mother with notice of the hearing. *Id.* at 5. Also present was Attorney DeMarco, who was identified as "Child Advocate" in the transcript. *Id.* at 2. At the TPR hearing, DHS presented the testimony of Dr. Jennifer Cole-Pucci, a clinical and forensic psychologist; Javon Taltoan, a Community Umbrella Agency (CUA) case manager; and Jasmine Brown, a visitation coach.

Dr. Cole-Pucci was qualified as an expert in forensic psychology, as well as in parenting capacity and bonding evaluation. *See id.* at 7. Dr. Cole-Pucci testified that she performed a parenting capacity evaluation of Mother on July 12, 2024 and a bonding evaluation of Mother and Child on July 25, 2024. *See id.* at 8-9. Child was two and a half years old at the time of these evaluations. Dr. Cole-Pucci testified that during the bonding evaluation Child wanted to play with toys rather than remain seated in Mother's lap but Mother did not notice Child's "cues" or "desire for independent play." *Id.* at 22-23. Dr. Cole-Pucci noted that as a result Child got frustrated, stomped her feet, and began "whining in protest." *Id.* Dr. Cole-Pucci opined that while there was a bond between Mother and Child, it was not a strong bond and that Child sought Mother for comfort but was also frustrated with Mother. *Id.* at 29; *see also id.* at 37 (reiterating that Child became frustrated with Mother during the bonding evaluation interaction).

Dr. Cole-Pucci's bonding evaluation report reflects that, at the time of the evaluation, Child could say words such as "ball" and "bye bye," sing the alphabet song, answer questions such as "'what color is this?'" and understand

when told to wait before taking an action. DHS Ex. 7, Bonding Eval., 9/7/24, at 8-10 (unpaginated and some formatting altered).

Ms. Taltoan testified that she had been Child's case manager for the past one and a half years and, during this period, observed Child with Foster Mother about once a month, a total of approximately fifteen observations. N.T., 6/2/25, at 41-42, 63, 66. She also observed Child with Mother a "few times." *Id.* at 62. Comparing Child's bond with Mother to Child's bond with Foster Mother, Ms. Taltoan testified that Child responds to Mother in a "disconnected" way, similar to how Child responds to Ms. Taltoan. *Id.* Conversely, Ms. Taltoan noted that Child is affectionate with Foster Mother and that Child typically seeks out Foster Mother for her needs. *Id.* Further, Ms. Taltoan testified that Child refers to Foster Mother as "mom" but does not "really call [Mother] anything." *Id.* at 64, 66-67. Ms. Taltoan described Child as "doing really well in [Foster Mother's] home" and explained that Child was already reading and was "so happy" in the home. *Id.* at 65.[2] Ms. Taltoan also testified that she had notified Mother of the TPR hearing date in person after the previous court date. *Id.* at 44-45.

Ms. Brown testified that she had served as the visitation coach for Child and Mother since May of 2023. *Id.* at 74. Ms. Brown stated that, during the

_____

[2] We note that Ms. Taltoan testified that Child was four years old. *See* N.T., 6/2/25, at 65. However, the record reflects that Child was in fact aged three and half years at the time of the TPR hearing. *See* Termination Petition, 11/14/24, Ex. A (Child's birth certificate).

visits, Child never said "I miss you" to Mother and that Child typically led the visits by choosing the toys and activities. *Id.* at 75. Ms. Brown testified that Child did not show any signs of a bond with Mother, that Mother's presence in the room did not affect Child, and that Child would be happy in the visitation room with only the toys and Ms. Brown. *Id.* at 76-77.

At closing arguments, Attorney DeMarco argued for the termination of Mother's parental rights in part because Child had been with Foster Mother for years, had bonded with Foster Mother, referred to Foster Mother as her "mother," and was being well cared for by Foster Mother. *Id.* at 79. At the conclusion of the TPR hearing, the trial court found clear and convincing evidence to involuntarily terminate Mother's parental rights and to change Child's dependency goal to adoption. *See* Trial Ct. Op., 8/15/25, at 1; *see also* N.T., 6/2/25, at 79. Mother filed a timely notice of appeal and a concurrent concise statement of matters complained of on appeal.[3]

On appeal, Mother raises the following claims:

1. Whether the trial court erred by terminating the parental rights of Mother pursuant to 23 Pa.C.S. [§] 2511(a)(1) without clear and convincing evidence of Mother's intent to relinquish her parental claim or refusal to perform her parental duties.

2. Whether the trial court erred by terminating the parental rights of Mother pursuant to 23 Pa.C.S. [§] 2511(a)(2) without clear and convincing evidence of Mother's present incapacity to perform parental duties.

---

[3] Mother filed two separate notices of appeal, one in the dependency case and one in the adoption case. This Court consolidated the appeals on July 31, 2025. *See* Order, 7/31/25.

3. Whether the trial court erred by terminating the parental rights of Mother pursuant to 23 Pa.C.S. [§§] 2511(a)(5) and (8) without clear and convincing evidence to prove that reasonable efforts were made by [DHS] to provide Mother with additional services and that the conditions that led to placement of [] Child continue to exist.

4. Whether the trial court erred by terminating the parental rights of Mother pursuant to 23 Pa.C.S. [§] 2511(b) without clear and convincing evidence that there is no parental bond between Mother and [] Child and that termination would serve the best interest of [] Child.

5. Whether the trial court erred by changing the permanency goal to adoption pursuant to 42 Pa.C.S. [§] 6351 without clear and convincing evidence that adoption is in [] Child's best interest.

6. Whether the trial court erred by changing the permanency goal to adoption pursuant to 42 Pa.C.S. [§] 6351 without clear and convincing evidence that reasonable efforts were made by the servicing agency to reunify [] Child with Mother.

7. Whether the trial court erred by changing the permanency goal to adoption in contravention of the mandate of 42 Pa.C.S. [§] 6302 to preserve the unity of the family whenever possible.

Mother's Brief at 8 (some formatting altered).

Before we review Mother's claims, we must first address Child's right to legal counsel in the contested TPR proceedings. *See In re Adoption of K.M.G.*, 240 A.3d 1218, 1224, 1235-36 (Pa. 2020) (holding that appellate courts should review *sua sponte* whether the trial court appointed counsel to represent a child's legal interests in TPR proceedings and, in the event that the same attorney was appointed to represent a child's best interests as well as legal interests, whether the trial court determined that there was no conflict between these interests prior to making the appointment); *see also In re H.H.N.*, 296 A.3d 1258, 1264 (Pa. Super. 2023) (same).

Section 2313(a) of the Adoption Act provides, in relevant part:

> The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian *ad litem* to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S. § 2313(a).

In applying Section 2313(a), our Supreme Court has recognized that where "a child's legal interests conflict with the child's best interests, those interests must be represented by separate individuals during the termination proceedings to ensure that the child's legal interests are presented to the [trial] court." **K.M.G.**, 240 A.3d at 1234 (footnotes omitted); **see also id.** at 1236 (concluding that "a single attorney cannot represent a child's best and legal interest if those interests conflict" (citing **In re T.S.**, 192 A.3d 1080, 1082 (Pa. 2018))).

> Specifically, the **K.M.G.** Court held that where a trial court
>
> has appointed a GAL/Counsel to represent both the child's best interests and legal interests, appellate courts should review *sua sponte* **whether the [trial] court made a determination** that those interests did not conflict. . . .
>
> [T]he [trial] court must determine whether counsel can represent the dual interests before appointing an individual to serve as GAL/Counsel for a child. . . . [A]ppellate courts should verify that the [trial] court indicated that the attorney could represent the child's best interests and legal interests without conflict. . . .
>
> [The appellate court's] *sua sponte* review . . . evaluate[s] (1) whether the [trial] court appointed counsel to represent the legal

- 7 -

interests of the child[] and[,] (2) if the appointed counsel also serves as GAL, whether the [trial] court determined that the child's best interests and legal interests did not conflict.

*Id.* at 1235-36 (citation omitted and emphasis added).

After *K.M.G.*, our Supreme Court in *In re P.G.F.*, 247 A.3d 955 (Pa. 2021) addressed how to determine whether such a conflict exists, recognizing that children "fall within a wide range of ages, maturity levels, and emotional capacity that all factor into a child's ability to express a preference." *P.G.F.*, 247 A.3d at 966. Within this range, there

may be a child who understands to some degree what is at stake in the proceedings, and who is capable of expressing some preference, but who is unable to do so in a fully informed and articulate fashion. In these instances, an attorney must make reasonable, but at the same time prudent, efforts to discern the child's desires.

*Id.*

Subsequently, in *In re Adoption of A.C.M.*, 333 A.3d 704 (Pa. Super. 2025), this Court noted that

in *K.M.G.*, our Supreme Court clearly stated the primary role of trial courts in determining whether children in contested [TPR] proceedings require separate legal and best interests' counsel. To fulfill its statutory duty under Section [] 2313, the [trial] court[] must . . . **make that determination prior to appointment**.

*A.C.M.*, 333 A.3d at 708 (citations omitted, emphasis original, some formatting altered). A trial court's failure to "appoint an attorney to represent the child's legal interests, *i.e.,* the child's preferred outcome, . . . constitutes structural error in the termination proceedings." *K.M.G.*, 240 A.3d at 1224 (citing *T.S.*, 192 A.3d at 1082); *see also In re L.B.M.*, 161 A.3d 172, 183

- 8 -

(Pa. 2017) (holding that "[t]he denial of mandated counsel compromises the framework of the proceedings and constitutes a structural error"); *see also A.C.M.*, 333 A.3d at 708.

In *A.C.M.*, this Court concluded that the trial court committed structural error in "assign[ing to the GAL] the responsibility of identifying any conflict of interest" between counsel's duties as GAL and as the child's legal counsel. *A.C.M.*, 333 A.3d at 708-09. Therefore, the *A.C.M.* Court remanded for the trial court to hold a hearing to determine if a conflict existed between the child's best interests and legal interests. *See id.* at 709. If no conflict existed, the trial court was to re-enter the TPR order and, if a conflict existed, the trial court was to hold a new TPR hearing where the child would be represented by separate legal counsel. *See id.*; *see also L.B.M.*, 161 A.3d at 183.

In determining whether a structural error occurred, our Supreme Court has stated there is no error when a trial court fails to appoint separate legal counsel for the child when the subject "child's wishes [could not] be ascertained." *T.S.*, 192 A.3d at 1089. Specifically, the *T.S.* Court explained that where "the preferred outcome of a child is incapable of ascertainment because the child is very young and pre-verbal, there can be no conflict between the child's legal interests and his or her best interests." *Id.* at 1092;

*see also In re N.M.D.*, 430 WDA 2025, 2026 WL 92201, at \*4 (Pa. Super. filed Jan. 13, 2026) (unpublished mem.).[4]

Here, the record reflects that the trial court did not issue any further orders appointing counsel for Child after DHS filed the TPR petition, and Attorney DeMarco continued to appear on Child's behalf in the TPR proceedings. The record does not indicate that the trial court made a determination as to whether there was a conflict between Child's best interests and legal interests prior to Attorney DeMarco's appointment on June 7, 2022, or at any other time during the TPR proceedings. *See K.M.G.*, 240 A.3d at 1234-36; *A.C.M.*, 333 A.3d at 708. Further, the record does not reflect that any party addressed Child's "preferred outcome" in the proceedings, the interest that the Section 2313(a) right to counsel is intended to protect.[5] *See K.M.G.*, 240 A.3d at 1224; *T.S.*, 192 A.3d at 1082; *L.B.M.*, 161 A.3d at 183; *A.C.M.*, 333 A.3d at 708; *N.M.D.*, 2026 WL 92201, at \*4. Accordingly, we are constrained to conclude that the trial court erred by failing to appoint Section 2313(a) counsel for Child and/or failing to place a determination on

---

[4] We may cite to unpublished memorandum decisions of the Superior Court filed after May 1, 2019, for their persuasive value. *See* Pa.R.A.P. 126(b).

[5] DHS in its brief states that Attorney DeMarco appropriately "represented both Child's best interests as [GAL] and legal interests as child advocate, in accordance with [Section] 2313(a)." DHS' Brief at 6, n.5 (citing *T.S.*, 192 A.3d at 1088). DHS describes the *T.S.* presumption as applicable "where a child is too young to express a subjective, articulable preference." *See id.* We disagree that the record sufficiently supports such a conclusion, as the trial court made no determination on the record addressing any conflict in Child's interests and, further, the record does not support DHS' contention that Child could not express a preference.

the record stating that there was no conflict between Child's best interests and legal interests such that Attorney DeMarco could serve in a dual capacity. *See* 23 Pa.C.S. § 2313(a); *K.M.G.*, 240 A.3d at 1234, 1236; *see also T.S.*, 192 A.3d at 1082; *A.C.M.*, 333 A.3d at 708; *L.B.M.*, 161 A.3d at 183.

Further, as noted previously, although Child was young, she was not 'pre-verbal' and there is no indication that Child's wishes could not be ascertained. *See T.S.*, 192 A.3d at 1089; *N.M.D.*, 2026 WL 92201, at *4. At the time of the TPR hearing, Child was approximately three and a half years old and the trial court had consistently found that Child was "developmentally on target" and "doing well." *See, e.g.*, Dependency Ct. Order, 11/12/24, at 2. Dr. Cole-Pucci's testimony reflected that, by the time Child was two and half years old, Child was able to communicate her preferences, including her frustration with Mother's failure to respond to Child's preferences. *See* N.T., 6/2/25, at 23. Approximately one year before the TPR hearing, Child already had some verbal ability, as she could sing, answer simple questions, and understand simple instructions. *See* DHS Ex. 7, Bonding Eval., 9/7/24, at 8-10. Additionally, Ms. Taltoan's testimony reflects that by the time of the TPR hearing Child referred to Foster Mother as "mom" but did not call Mother anything. *Id.* at 64-65. Most compellingly, Ms. Taltoan testified that Child already knew how to read and was "so happy" and "doing really well" in Foster Mother's home. *Id.* at 65.

The record does not support a conclusion that Child was incapable of expressing her preferences, nor that efforts were made to ascertain Child's

desired outcome. Where a child has some ability to articulate a preferred outcome, counsel for the child must make "efforts to discern the child's desires." **P.G.F.**, 247 A.3d at 966. Here, while Child was quite young – three and a half years old at the TPR proceedings – nonetheless she could express her preferences. Consequently, we are unable to apply the **T.S.** presumption that there was no conflict between Child's best interests and legal interests. **See T.S.**, 192 A.3d at 1089; **N.M.D.**, 2026 WL 92201, at *4. Accordingly, on this record, we are constrained to find that the trial court committed a structural error in failing to appoint Section 2313(a) counsel for Child. **See K.M.G.**, 240 A.3d at 1234, 1236; **A.C.M.**, 333 A.3d at 708; **L.B.M.**, 161 A.3d at 183. We therefore vacate the TPR decree below and remand for further proceedings in the adoption matter. **See K.M.G.**, 240 A.3d at 1234, 1236; **A.C.M.**, 333 A.3d at 708; **L.B.M.**, 161 A.3d at 183. We do not, however, disturb the trial court's goal change order in the dependency matter.

Consistent with Section 2313(a), **K.M.G.**, and **A.C.M.**, upon remittal of the record, the trial court shall hold a hearing to determine whether there is a conflict between Child's best interests and legal interests that would prevent Attorney DeMarco from serving in a dual capacity. **See K.M.G.**, 240 A.3d at 1234-36; **A.C.M.**, 333 A.3d at 709. If the trial court determines that no conflict exists, it shall re-enter its order terminating Mother's parental rights, which will constitute a final, appealable order. **See A.C.M.**, 333 A.3d at 709 (citing **In re A.J.R.O.**, 270 A.3d 563, 570 (Pa. Super. 2022)). If the trial court determines that there is a conflict between Child's best interests and

legal interests, then the trial court shall appoint separate legal counsel for Child and conduct a new TPR hearing. ***See id.***; ***see also K.M.G.***, 240 A.3d at 1235. Notwithstanding our vacatur of the trial court's TPR decree of June 2, 2025, we do not disturb Child's placement with Foster Mother, where she has remained since shortly after birth. ***See*** Trial Ct. Op., 8/15/25, at 2. This will maintain the status quo while the trial court addresses Child's right to counsel consistent with this memorandum.[6]

Goal change order affirmed. Termination order vacated. Remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/18/2026

---

[6] Because we resolve this appeal based on Child's right to legal counsel in the TPR proceedings, we need not reach the merits of Mother's claims.