J-S64045-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: P.G.F | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: K.F., NATURAL FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1284 WDA 2019 |

Appeal from the Order Entered August 7, 2019
In the Court of Common Pleas of Bedford County Orphans' Court at
No(s):  No. 3 AD 2018

BEFORE:   BOWES, J., LAZARUS, J., and PELLEGRINI, J.[*]

DISSENTING MEMORANDUM BY BOWES, J.:        **FILED JANUARY 27, 2020**

I respectfully dissent.  While I agree that the certified record supports the statutory grounds to terminate the parental rights of K.F. ("Father") to P.G.F., pursuant to 23 Pa.C.S. § 2511(a) and (b), I believe that the majority's discussion of court-appointed counsel's legal-interest analysis misses the mark.  As I discuss *infra*, I would conclude that P.G.F.'s desire to continue to live with T.G.H. ("Mother") and her husband ("Husband") has no bearing on the determinative question whether the child prefers to preserve or terminate Father's parental rights.  Moreover, I do not believe that the fact that now-seven-year old P.G.F. is unaware that Father, with whom he is casually

---

[*] Retired Senior Judge assigned to the Superior Court.

acquainted, is his birth parent provides a sufficient basis to impute P.G.F.'s legal interest.

By memorandum dated March 13, 2019, this Court vacated the order granting the petition filed by Mother to involuntarily terminate Father's parental rights to P.G.F. and remanded the case to the orphans' court with the following instructions:

> On remand, we direct the orphans' court to re-appoint legal counsel for Child forthwith. Counsel must attempt to ascertain Child's preferred outcome as to Father by directly interviewing him, following any direction to the extent possible, and advocating in a manner that comports with Child's legal interests. Once Child's preferred outcome is identified, counsel shall notify the orphans' court whether termination of Father's parental rights is consistent with Child's legal interests. If Child's preferred outcome is consistent with the result of the prior termination proceedings, the orphans' court shall re-enter its September 11, 2018, termination order as to Father. If the preferred outcome is in conflict with the prior proceeding, the orphans' court shall conduct a new termination/goal change hearing as to Father to provide Child's legal counsel an opportunity to advocate on behalf of Child's legal interests.

*Interest of P.G.F.* No. 1464 WDA 2018, unpublished memorandum at 11 (Pa.Super. filed March 13, 2019) (citation omitted).

Upon remand, the orphans' court reappointed Carol Ann Rose, Esquire "as legal counsel/guardian *ad litem*" and directed her to interview P.G.F. in order to determine "his preferred outcome/legal interest in this case." Order, 5/1/19. Attorney Rose subsequently interviewed P.G.F. and drafted a letter summarizing that exchange. During the ensuing hearing, the orphans' court read the contents of the letter into the record. After Attorney Rose informed

the court that she did not believe that she had "any conflict serving as both guardian and legal counsel in this case," Father's counsel questioned her about the interview with P.G.F. and her ultimate determination that she did not have a conflict of interest. N.T., 8/7/19, at 4-7, 8-20. While the majority is satisfied with Attorney Rose's inquiry, I am not.

Two Supreme Court cases inform my perspective of the proper examination of Attorney Rose's representation of P.G.F.'s legal interest. In *In re Adoption of L.B.M.*, 161 A.3d 172, 174 (Pa. 2017) (plurality), the justices unanimously held that 23 Pa.C.S. § 2313(a) requires that counsel be appointed to represent the child's legal interest, which it defined as "synonymous with the child's preferred outcome," in a contested involuntary termination proceeding. A division among the justices arose concerning whether one attorney may simultaneously represent a child's legal interest and best interests. However, the High Court subsequently held that a guardian *ad litem* who is an attorney may only serve as legal counsel when there is no conflict between the child's legal interest and best interests. *See In re T.S.*, 192 A.3d 1080, 1092 (Pa. 2018).

As applied to this case, Attorney Rose may act in her dual capacity as guardian *ad litem* and legal counsel if P.G.F.'s preference as to the outcome of the termination of parental rights proceedings aligns with his best interest. Thus, as a threshold matter, Attorney Rose was required to determine P.G.F.'s preference regarding whether to terminate Father's parental rights, which the

orphans' court determined, did in fact, serve his best interest. While Attorney Rose presented several reasons in support of her determination that no conflict existed between the legal and best interests in this case, she did not state that P.G.F. had a preference as to the outcome of the termination proceedings. Indeed, Attorney Rose neglected to ask P.G.F. this precise question. Instead, she gleaned the child's preference from his various relationships and interactions with Mother, Husband, and paternal grandmother, "Grammy." Similarly, in sustaining Attorney Rose's legal-interest determination, the majority relied upon the child's purported preference to remain in Mother's physical custody as a basis to infer a preferred outcome of the termination proceeding. As noted, *supra*, these concerns are not relevant to the determination of P.G.F.'s legal interest.

I reproduce the pertinent aspects of the majority's analysis for ease of discussion: "Attorney Rose consulted with Child and determined that Child's preferred outcome was to remain with Mother and Husband. In fact, Child became upset when considering the possibility of not living with Mother and Husband. Child identified Husband as his father and did not seem to remember Father at all." Majority Memorandum at 7 (citations to record omitted). It continued, "When asked if he knew anyone by Father's name, Child could only recall a classmate who shares the same name as Father. He did not appear to recall spending any time with [F]ather. He identified

Husband's parents as his own grandparents." ***Id***. at 7-8 (citations to record omitted).

At the outset, I note that, to the extent that Attorney Rose's statements that P.G.F. did not remember Father, recall his name, or recollect spending time with Father during Christmas 2017, may be relevant to the determination of the child's legal interest, I submit they have little support in the certified record. For instance, P.G.F.'s inability to recall Father or identify him by name must be considered in light of Mother's previous testimony that P.G.F. referred to Father by his first name or as "Grammy's" friend. N.T. 7/31/18, at 31-32. Mother also testified as to P.G.F.'s interaction with Father over the Christmas holiday. She stated, "[P.G.F.] went to Christmas and when [he] came home, I asked him . . . [d]id [K.F.] talk to you? And he said, not really." ***Id***. at 31. Thus, notwithstanding Attorney Rose's reporting of her interview with P.G.F., the record indicates that the child is aware of Father, whom he knows by name, even if he is not conscious of Father's status as a birth parent.

Furthermore, I observe that the majority's statement regarding P.G.F.'s relationship with Husband's parents is inaccurate. While the majority indicates that P.G.F. identified Husband's parents as his own grandparents, in actuality, P.G.F. identified his maternal and paternal grandmothers as "Nanny and Grammy," respectively, and referred to Husband's parents as "Mr. and Ms. Harris." ***See*** N.T., 8/7/19 at 5. Thus, that component of the majority's analysis holds no sway.

Beyond the foregoing observations regarding the lack of clarity concerning P.G.F.'s awareness of Father and interactions with his paternal grandmother, the twin cruces of my dissent are that Attorney Rose neglected her primary obligation of determining her client's legal interest, *i.e.* whether to advocate in favor of severing or preserving Father's rights, and the majority incorrectly invoked P.G.F.'s preference to continue to reside with Mother in support of its legal-interest determination. As it relates to the latter point, it is beyond argument that the child's preference regarding physical custody is not suggestive, much less determinative, of his legal interest. The question is not whether P.G.F. preferred to remain in the same household as Mother and Husband, but whether he prefers to sever Father's parental rights.

Further, as Mother's custodial rights were never at issue, and there was no possibility that P.G.F. would be removed from Mother's home in these proceedings, we cannot infer the child's legal interest from his desire to continue living with Mother. P.G.F.'s preferences regarding Mother's physical custody are immaterial to the essential issue concerning his legal interest, *i.e.*, P.G.F.'s preferred outcome of the termination proceedings.

Next, in reference to Attorney Rose's representation of P.G.F.'s legal interest, it is clear from the certified record that Attorney Rose specifically avoided asking P.G.F. his preferred outcome, although she confirmed that the nearly seven-year-old was able to express a preference at the time of the interview, and it was her mandate as legal counsel to advocate in favor of that

preference.[1]  N.T., 8/7/19, at 16.  During the remand hearing, Attorney Rose described her hesitation to cross this threshold, even when improperly couched in terms of physical custody.

> I was not able to say to [P.G.F.] that [Father] is his biological Father and that's an option.  If you want to live with your biological father who is not [Husband], then that's an option.  I don't think I have the authority or the right to say that to him because he, [P.G.F.] did not understand that.  Like, [P.G.F.] did not understand that [Husband] was not his daddy.  And when he told me that he

_____

[1] Notwithstanding my colleagues' protestation to the contrary, this case does not present the "unique circumstances" that we considered in *In re Adoption of C.J.A.*, 204 A.3d 496, 502 (2019).  It is beyond cavil that, "there can be no conflict between an attorney's duty to advance a subjective preference on the child's part which is incapable of ascertainment."  *In re T.S.*, 192 A.3d 1080, 1090 (Pa. 2018).  We verified this foundational principle in *In re C.J.A.*, where legal counsel determined that, "due to the age and maturity of Child along with the fact that he did not know Father was his biological father, [she] was unable to explain [to him] the termination of parental rights proceeding and/or discuss the potential adoption by Fiancé." *In re C.J.A.*, at 502 (citing counsel's brief).  Thus, consistent with our High Court's determination in *In re T.S.*, the *In re C.J.A.* Court concluded, that even though counsel did not inquire about her client's preferred outcome or advise him of the family dynamic, she "discharged her duty as Child's counsel to the best of her ability based on his age, mental condition, and emotional condition." *In re C.J.A.*, *supra* at 502.

In my view, it is unwise to invoke our decision in *In re C.J.A.*, to excuse Attorney Rose's performance herein, without first acknowledging the singular differences between the two cases vis-à-vis our Supreme Court's holding in *In re T.S.*  In contrast to the facts of *In re C.J.A.*, the certified record bears out that the maturity and emotional conditions of P.G.F. did not create a comparable obstacle to counsel's ability to ascertain the child's preference.  In fact, as highlighted in the body of my dissent, Attorney Rose specifically **confirmed** that P.G.F. was capable of expressing a preference when she interviewed him.  N.T., 8/7/19, at 16.  Nevertheless, she declined to ask him about his preferred outcome, and instead, assigned to him a preference based on her inquires about physical custody.  For these reasons, the majority's reliance upon *In re C.J.A.* is unconvincing.

didn't know who [Father] was, do I tell him[?] [W]ell – I would have to explain to him why [Father] wasn't in his life and I don't think I have any right to say well, . . . "Mommy kept Daddy away from you." And I'm not going to destroy these kids that I'm guardian of. I don't think that's my Job. I really don't.

*Id*. at 16-17.

While Attorney Rose's desire to exercise her authority judiciously is laudable, it is a misstatement of law for her to say that she has no right to disclose family confidences to P.G.F. In reality, it is attorney Rose's principal obligation as legal counsel to ascertain P.G.F.'s legal interest and promote it. Thus, at a minimum, she must provide P.G.F. with the necessary facts to enable him to articulate any preference he has about the outcome of the termination proceedings. That is, counsel should gently explain to P.G.F. the adoption proceedings, identify K.F. as P.G.F.'s legal father, and ask the child if he has a preferred outcome.[2]

In contested involuntary termination proceedings, the representation of the child's legal interest is preeminent. As the Supreme Court set forth in *In re Adoption of L.B.M.*, *supra* and *In re T.S.*, *supra*, § 2313(a) compels the orphans' court to appoint counsel to represent P.G.F.'s legal interest in this contested involuntary termination proceeding and permits an attorney

---

[2] If Mother is concerned about the potential for emotional harm to P.G.F. because a relative stranger will inform P.G.F. of the radical change to his prior understanding of the family dynamic, Mother could advise her son, in the first instance, of the situation that she created by concealing Father's status for seven years.

guardian *ad litem* to represent that preeminent interest if no conflict exists between the legal interest and best interests. Indeed, the Adoption Act does not require the appointment of a guardian *ad litem* or a representation of the child's best interests in these circumstances.

Attorney Rose's representation falls short of the statutory mandate provided in § 2313(a) because she elected to forego the one question that she was obligated to pose to her client, *i.e.*, whether he wanted to sever or preserve Father's parental rights. Accordingly, she neglected to eliminate the potential for a conflict between advocating for P.G.F.'s still-undisclosed legal interest and what she deemed to be in his best interests.

Furthermore, Attorney Rose's apprehension concerning her authority to disclose to P.G.F. the thorny family dynamic is misplaced. I highlight that Mother implicitly granted Attorney Rose the authority to advise P.G.F. of the facts by filing the contested petition to involuntarily terminate Father's parental rights, and thus, triggering an examination of P.G.F.'s legal interests. Similarly, having made the determination that P.G.F. is capable of proffering a preference, to the extent that it is necessary for Attorney Rose to expose unpleasant truths in order to perform her **primary** professional obligation of representing P.G.F.'s legal interest pursuant to § 2313(a), the facts must be revealed.

In summary, rather than rely upon the unreliable responses proffered by the child under the confusing trappings of Mother's physical custody, I

believe that Attorney Rose must present to P.G.F. the relevant facts, including the fact that the person known to him as K.F. or "Grammy's friend" is his father, and that the orphans' court must terminate K.F.'s parental rights in order for Husband to complete the adoption. Whether Attorney Rose feels it necessary to expound upon the nature of Father's absence in order to provide her client sufficient information to articulate a preferred outcome, if any, is up to her professional judgment.

As the majority declines to require Attorney Rose to actually ascertain P.G.F.'s legal interest and represent it as mandated by § 2313(a), I respectfully dissent.