J-S21002-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: I.T. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: R.T., JR., NATURAL | : | |
| FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1824 WDA 2019 |

Appeal from the Order Dated December 5, 2019
In the Court of Common Pleas of Bedford County Orphans' Court at
No(s):  AD 22 FOR 2018

BEFORE:  LAZARUS, J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:               **FILED APRIL 24, 2020**

R.T., Jr. (Father) appeals from the trial court's decree involuntarily terminating his parental rights to his minor child, I.T. (born March 2016) ("Child").  Counsel has also filed a petition to withdraw on appeal, pursuant to *Anders v. California*, 386 U.S. 738 (1967).  After careful review, we affirm and grant counsel's petition to withdraw.

Father and L.A. ("Mother"), who were never married, are the parents of Child.  Child has resided with Mother since birth; Father lived with them for the first six weeks of Child's life.  N.T. Termination Hearing, 5/17/19, at 10, 11.  Due to his history of drug and alcohol abuse, Father was always supervised when with Child and was never left alone with her, even when he lived with Mother and Child.  *Id.* at 12.  After Father moved out of the family residence, Mother filed a complaint in the Orphans' Court seeking custody of Child.  On June 6, 2016, the court granted Mother legal and primary physical

custody and granted Father weekly supervised visits. ***See*** Trial Court Order, 6/6/16, at ¶ 3. Mother testified that Father's visits with Child were "sporadic" and often facilitated by her driving 30 miles to pick him up. N.T. Termination Hearing, 5/17/19, at 14. Father often smelled of alcohol during his visits, which Mother preferred to hold in public places due to Father's "ability to become antagonistic" with her. ***Id.*** at 14, 16.

On January 24, 2017, the court entered a protection from abuse ("PFA") order against Father following an incident during a visit at Mother's residence in which Father was verbally abusive, slammed his body into Mother while she was holding Child, and refused to leave until instructed to do so by a state trooper. ***Id.*** at 60-62. On the same date, the court entered an order in the parties' custody matter scheduling a review hearing for April 2017, granting Mother legal and primary physical custody of Child, and allowing Father two hours of visitation per week, to be supervised by Mother's parents. ***See*** Trial Court Order, 1/24/17, at ¶¶ 1-4. The court also directed Father to abstain from alcohol for a period of 24 hours prior to any visit with Child. ***Id.*** at ¶ 5.

On April 24, 2017, the court held a custody review hearing, at which Father failed to appear. At that hearing, maternal grandmother testified that Father smelled of alcohol at several visits and, during one of those visits, was significantly impaired. N.T. Custody Review Hearing, 4/24/17, at 8-19. After hearing that testimony, the court suspended Father's partial custody rights, effective immediately. Thereafter, Father never had, nor attempted to have, any contact with Child. N.T. Termination Hearing, 5/17/19, at 67-69. Mother

filed a petition to terminate Father's parental rights on December 17, 2018.
**See** 23 Pa.C.S. § 2512(a)(1). The court held hearings on the petition on May
17, 2019 and December 5, 2019. Child was represented by Carol Ann Rose,
Esquire, who acted as both counsel and guardian *ad litem*.[1] At the termination
hearing, Mother testified that there is no bond between Father and Child and
that Child "wouldn't even be able to pick him out of a line[-]up to even know
who he is." N.T. Termination Hearing, 5/17/19, at 75. Mother further testified
that Child has a close bond with her step-father, whom she refers to as "Daddy
[J.]," and that he intends to adopt Child. **Id.** at 77-78, 85.

On December 5, 2019, the court entered the instant decree terminating
Father's parental rights pursuant to 23 Pa.C.S. §§ 2511(a)(1) and (b) of the
Adoption Act.[2] Father filed a timely notice of appeal. Counsel has filed an
**Anders** brief and petition to withdraw.

In her **Anders** brief, counsel raises the following issue for our
consideration:

_____

[1] At the termination hearing on May 17, 2019, the Orphans' Court concluded, after questioning Attorney Rose, that there was no conflict between Child's legal and best interests. **See** N.T. Termination Hearing, 5/17/19, at 8. Accordingly, the Orphans' Court determined—and counsel for the parties agreed—that it was unnecessary to appoint separate counsel to represent Child's legal interests. As a result, Attorney Rose served in the dual role as Child's guardian *ad litem* and legal counsel. **See In re T.S.**, 192 A.3d 1080 (Pa. 2018) (reaffirming ability of attorney/guardian *ad litem* to serve dual role representing child's non-conflicting best interests and legal interests).

[2] 23 Pa.C.S. §§ 2101-2938.

Whether the trial court committed reversible error when it ruled that . . . Father's parental rights be terminated?

*Anders* Brief, at 7.

Before reaching the merits of Father's appeal, we must first address counsel's petition to withdraw. To withdraw under *Anders*, counsel must:

> (1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; (2) furnish a copy of the [*Anders*] brief to the [appellant]; and (3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013) (en banc), citing *Commonwealth v. Lilley*, 978 A.2d 995, 997 (Pa. Super. 2009). With respect to the third requirement of *Anders*, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to [his or her] petition to withdraw a copy of the letter sent to their client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

An *Anders* brief must also comply with the following requirements:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

- 4 -

*Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009). Finally, this Court must "conduct an independent review of the record to discern if there any additional, non-frivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted).

Instantly, Father's counsel filed a petition to withdraw, certifying that she reviewed the record and determined that Father's appeal is frivolous. Counsel also filed a brief, which includes a summary of the history and facts of the case, the issue Father wished to raise, and counsel's assessment of why that issue is wholly frivolous, with citations to relevant legal authority. Counsel has also provided Father with a copy of the brief and a letter advising him of his right to retain new counsel or raise additional issues *pro se*.[3] Accordingly, we find that counsel has substantially complied with the requirements of *Anders* and *Santiago*, and, thus, may review the issue raised by counsel and also conduct our independent review of the record.

Our standard of review in termination of parental rights cases is well-settled:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously

---

[3] Father has not raised any additional arguments on appeal.

emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

As discussed above, Mother testified extensively at the termination hearing as to Father's lack of contact with Child, his substance abuse issues, and his verbal and physical abuse towards Mother. Both Mother and maternal grandmother testified as to the substantial efforts they made to facilitate Father's visits with Child; maternal grandmother testified that she "bent over backwards" to accommodate Father's schedule. N.T. Termination Hearing, 12/5/19, at 61. Mother testified that Father's substance abuse issues were long-standing and that there were numerous occasions on which he was intoxicated during his visits with Child. N.T Termination Hearing, 5/17/19, at 14 ("Often times he'd still smell of booze, but this was something with me knowing him three years, this is how he was. He was always going to smell like booze when I saw him."). Father denied that his alcohol consumption was a problem, testifying as follows:

> Q: Was alcohol a big factor in the breakup of your relationship [with Mother]?
>
> A: Yes.
>
> Q: Was it because—do you think you were drinking too much? Or do you think that it was her believing you were drinking too much?
>
> A: It was her belief.
>
> . . .

Q: Did [Mother] explain to you why she was opposed to you having any alone time with your daughter—

A: Yeah—

Q: —or overnights with your daughter?

A: Because of my—she was afraid that I would drink, be drinking, around her.

Q: Okay. Well you would know better than anybody during that time period in 2016, were you able to control drinking and [be] able to not drink when your daughter was with you?

A: Yeah. I would not drink if my daughter was in my presence.

Q: Okay. So you disagree that you were drunk around the baby.

A: Yeah. I wasn't drunk around the baby, no.

. . .

Q: Okay, but you weren't—you're saying you didn't show up for a single visit intoxicated?

A: No, I drank the night before but I would not drink that same day.

. . .

Q: Did you ever show up at [maternal grandparents'] house intoxicated?

A: No.

N.T. Termination Hearing, 12/5/19, at 80-81, 89-90, 93.

Child has not seen Father since he failed to appear for the April 24, 2017 custody hearing at which his supervised partial custody was suspended. Father never petitioned the court to modify that order to restore his visitation—he testified he did not do so because he had transportation issues, a suspended license, and was in jail for a period of time. *Id.* at 111. Father testified that he texted Mother to inquire about Child, but Mother failed to

- 7 -

respond. *Id.* at 114-15. Mother testified that Father has not asked to see Child since the PFA order expired in January 2018. N.T. Termination Hearing, 5/17/19, at 69.

Child currently lives with Mother, Mother's husband, J.L., and his daughter, C.L., who was 5 at the time of the May 2019 hearing. Mother testified that Child has a "very loving" bond with J.L., who is "reliable" and a "very stable father figure." *Id.* at 77. Mother characterizes Child's relationship with J.L. as the "true father/daughter relationship that [she] had hoped for" for Child. *Id.* J.L. testified that it was his intention to adopt Child, who refers to him as "Daddy." N.T. Termination Hearing, 12/5/19, at 66, 70. J.L. testified that he loves Child "with all [his] heart" and "in [his] heart and in [his] mind . . . believe[s] she is [his] daughter." *Id.* at 70.

At the conclusion of the termination hearing, the court asked Attorney Rose, legal counsel and guardian *ad litem* for Child, for her recommendation.

> ATTORNEY ROSE: [] As guardian *ad litem*, as to [Child's] best interest, she has no recollection of her biological father. She truly does consider [J.L.] as her father figure. When I ask her specifically as to does she call anyone by Dad or Daddy, she specifically said at that time she did, it was Daddy [J.]. . . . I think in her best interest, I think the biological father['s] rights should be terminated.
>
> As legal counsel, she was very specific as to what her wishes were. She wants to live with her Mommy and her Daddy [J.]. She was very specific, she did not want to live with anyone else. She wanted to make sure that [C.L.] was there and that's who she wanted to live with. And with those wishes, I believe there would be no conflict between the guardian *ad litem* and legal counsel. And again, the biological father should—rights should be terminated.

*Id.* at 145-46.

After hearing all the testimony as well as the recommendation of Attorney Rose, the trial court concluded that it was undisputed that Father performed no parental duties after April 2017 and, in fact, did not perform any significant parental duties after his separation from Mother when Child was six weeks old. *Id.* at 160-61. The court found that Mother had not impeded Father's ability to maintain contact with Child, *id.* at 161-62, and that, prior to the suspension of his visitation in April 2017, Father had been "under the influence [during certain visits to the extent] that it would impair his ability to perform parental duties." *Id.* at 164. The court also noted Father's failure to avail himself of the courts in an effort to regain visitation rights to Child. *Id.* at 165-67. In sum, the court credited Mother's testimony over that of Father and concluded that Father had failed to perform parental duties "well in excess of the time period" required under section 2511(a)(1). *Id.* at 165.

Similarly, the court cited the testimony by Attorney Rose that Child has "no real knowledge or understanding of her . . . biological father" and an "extremely strong bond" with J.L., her proposed adoptive father. *Id.* at 168. The court concluded that "the child needs a parent in her life" and "can't wait forever for that father to show up." *Id.* Because J.L. is ready and willing to assume that role, the court found that it was in Child's best interests to terminate Father's parental rights pursuant to section 2511(b).

After careful review of the record, we find there is ample, clear and convincing evidence to support the trial court's factual findings. *T.S.M.*,

- 9 -

*supra*.  Moreover, the court's conclusions are not a result of an error of law or an abuse of discretion.  *Id.*  Father has, for all intents and purposes, never served in a parental capacity for Child and Child would likely not recognize him if she saw him.  Conversely, J.L. has consistently provided Child with love and stability for nearly her entire life and she considers him to be her father.  J.L. is ready, willing and able to assume the parental responsibilities that Father has abdicated.  "A child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting."  *Adoption of C.J.P.*, 114 A.3d 1046, 1054 (Pa. Super. 2015) (citation omitted).  Accordingly, we find that the record amply supports the trial court's findings that termination was proper pursuant to section 2511(a)(1) where Father "has evidenced a settled purpose [for at least six months preceding the filing of the termination petition] of relinquishing [his] parental claim to [Child]."  23 Pa.C.S. § 2511(a)(1).

Additionally, Attorney Rose testified that terminating Father's rights is in Child's best interests and that Child expressed a clear preference to live with Mother, J.L., and C.L.  Accordingly, we find that the court properly found clear and convincing evidence for termination under section 2511(b).  *See In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006) ("The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future.").

Finally, our independent examination of the record indicates that there are no other non-frivolous claims that can be raised.  *Flowers*, *supra*.

- 10 -

Accordingly, we conclude Father's appeal is frivolous and grant counsel's motion to withdraw.

Decree affirmed. Petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/24/2020