J-A03011-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.L.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2373 EDA 2022 |

Appeal from the Order Entered August 18, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0003393-2017

| | | |
|---|---|---|
| IN THE INTEREST OF: S.M.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.L.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2374 EDA 2022 |

Appeal from the Decree Entered August 18, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000600-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: G.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.L.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2375 EDA 2022 |

Appeal from the Order Entered August 18, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0000848-2021

| IN THE INTEREST OF: G.A.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| APPEAL OF: J.L.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2376 EDA 2022 |

Appeal from the Decree Entered August 18, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000450-2022

BEFORE:   KING, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED APRIL 5, 2023**

J.C. ("Mother") appeals from the August 18, 2022 decrees involuntarily terminating her parental rights to her sons, S.C., a/k/a S.M.C. (born in December 2017), and G.C., a/k/a G.A.C. (born in August 2021) (collectively, "Children").[1]  Mother also appeals from the August 18, 2022 orders changing Children's permanency goals from reunification to adoption.  In addition, Mother's appointed counsel, James W. Martin, Esquire ("Counsel"), has filed a petition to withdraw and accompanying brief, pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978

_____

[*] Former Justice specially assigned to the Superior Court.

[1] By separate decrees the same date, the trial court terminated the parental rights to the putative father of S.C., D.C., the putative father of G.C., A.Y., and any unknown fathers to both Children.  Neither D.C., A.Y., nor any unknown father filed notices of appeal, and none have participated in this appeal.

- 2 -

A.2d 349 (Pa. 2009). After careful review, we grant Counsel's petition to withdraw, affirm the termination decrees, and dismiss the appeals from the goal change orders as moot.

The following relevant facts and procedural history are undisputed.[2] The Philadelphia Department of Human Services ("DHS") first became involved with this family in 2008 and then again in 2013 and 2014, with respect to her four children, none of whom are subjects of these appeals. DHS Petition, 8/5/2021, at ¶ a, e, m. On March 17, 2017, the trial court terminated Mother's parental rights to three of those children.[3] *Id.* at ¶ ff.

Thereafter, in December 2017, DHS received a general protective services ("GPS") report alleging that Mother gave birth to S.C. *Id.* at ¶ gg. The report further alleged that Mother did not appear prepared to care for S.C., and she had a history of using phencyclidine (PCP) and marijuana. *Id.* On December 27, 2017, DHS obtained an order of protective custody ("OPC")

---

[2] During the August 18, 2022 termination hearing, counsel for Mother stipulated to the facts as alleged in the petitions filed by DHS. Notes of testimony, 8/18/22 at 30-35.

[3] In July 2016, one of Mother's children died of natural causes. DHS Petition, 8/5/2021, at ¶ dd.

On June 25, 2018, this Court affirmed the decrees involuntarily terminating Mother's parental rights to two of the children. *In the Interest of A.M.*, 2018 WL 1979123 (Pa.Super. 2018) (unpublished memorandum). This Court vacated the order involuntarily terminating Mother's parental rights to the third child. *Id.*

for S.C. and placed him in the kinship care of his maternal great-cousin, J.S., where he currently remains.

At a shelter care hearing on December 28, 2017, the trial court lifted the OPC, ordered legal custody to DHS, and ordered the temporary commitment to stand. Subsequently, on January 10, 2018, after a hearing, the trial court adjudicated S.C. dependent. On April 4, 2018, the trial court issued an order finding that aggravated circumstances exist as to Mother due to the termination of her parental rights to other children.

Nevertheless, the court maintained a permanency plan of reunification. In furtherance of this goal, Mother was required to comply with the following objectives: (1) comply with mental health services, sign releases, and comply with all recommendations; (2) attend visitation; (3) report for random drug screens; (4) attend family school; (5) maintain stable employment; (6) obtain appropriate housing; (7) complete a parenting capacity evaluation and comply with the recommendations; and (8) attend Achieving Reunification Center ("ARC") for anger management, housing, and employment services. DHS petition, 8/5/2021, at ¶ pp; DHS petition, 7/25/2022, at ¶ q; Notes of testimony, 8/18/22 at 26-27.

In August 2021, DHS received another GPS report alleging that Mother gave birth to G.C.; she was homeless; she did not have infant supplies; and S.C. and one other child were in placement. On August 16, 2021, DHS

obtained an OPC for G.C., and placed him in the kinship care of a family friend, S.M., where he currently remains.

At a shelter care hearing on August 18, 2021, the trial court lifted the OPC, ordered legal custody to DHS, and ordered the temporary commitment to stand. On September 21, 2021, after a hearing, the trial court adjudicated G.C. dependent. On the same date, the trial court issued an order finding that aggravated circumstances exist as to Mother due to the termination of her parental rights to other children. The trial court established a permanency plan of reunification and provided Mother with largely the same objectives.

The record does not contain significant detail, but provides that over the course of the dependencies, Mother failed to consistently attend mental health services. In February 2022, JFK Behavioral Health discharged Mother due to lack of attendance. Notes of testimony, 8/18/22 at 20. Mother has also failed to consistently visit with and care for Children. DHS petition, 8/5/2021, ¶ nnn; DHS petition, 7/25/2022 ¶ u; Notes of testimony, 8/18/22 at 38-40, 44-47. Mother also failed to obtain suitable housing and maintain stable employment. 8/5/2021, ¶ nnn; DHS petition, 7/25/2022 ¶ u. Furthermore, as best we can discern from the record, Mother did not complete her ARC objective. DHS petition, 8/5/2021, ¶ uu.

On August 5, 2021, DHS filed a petition for the involuntary termination of Mother's parental rights to S.C. pursuant to 23 Pa.C.S.A § 2511(a)(1), (2), (5), (8), and (b), along with a petition to change S.C.'s permanency goal from

reunification to adoption.[4]  Thereafter, on July 25, 2022, DHS filed a petition for the involuntary termination of Mother's parental rights to G.C., then almost a year old, pursuant to 23 Pa.C.S.A § 2511(a)(1), (2), (5), (8), and (b), along with a petition to change G.C.'s permanency goal from reunification to adoption.

The trial court conducted an evidentiary hearing on August 18, 2022, at which time Children were ages four and one, respectively.  Children were represented by Faryl Bernstein, Esquire, as guardian **ad litem** ("GAL") and legal counsel.[5]

---

[4]  S.C.'s case was continued numerous times for various reasons including (1) the assigned judge was not available, (2) to obtain a contested time slot, (3) Mother's counsel was recently appointed, and (4) for reasons undisclosed in the record.

[5] Our Supreme Court has instructed this Court to verify *sua sponte* that the court appointed counsel to represent a child pursuant to 23 Pa.C.S.A. § 2313(a), and if counsel served in a dual role, that the court determined before appointment that there was no conflict between a child's best and legal interests.  **See In re Adoption of K.M.G.**, 240 A.3d 1218 (Pa. 2020).  If a child is "too young to be able to express a preference as to the outcome of the proceedings," there is no conflict between a child's legal and best interests, and a child's subsection 2313(a) right to counsel is satisfied by an attorney-GAL who represents the attorney-GAL's view of the child's best interests.  **See In re T.S.**, 192 A.3d 1080, 1092-1093 (Pa. 2018).

Regarding S.C., the trial court confirmed on the record that there was no conflict between his best and legal interests.  Notes of testimony, 8/18/22 at 8-10.  Concerning G.C., inasmuch as he was merely one year old at the time of the hearing, he was unable to express a preference.  Accordingly, we conclude that Children's statutory right to counsel was satisfied by Attorney Bernstein.

DHS presented the testimony of Michaela Finley, outpatient therapist at JFK Behavioral Health, and Jacqueline Tillman, Community Umbrella Agency ("CUA") case manager. Mother was represented by Counsel and did not appear. Counsel stated on the record to the trial court that Mother texted him immediately prior to the hearing that "her health is more important than this hearing." Notes of testimony, 8/18/22 at 11-12.

By decrees dated and entered August 18, 2022, the trial court involuntarily terminated Mother's parental rights to Children pursuant to 23 Pa.C.S.A § 2511(a)(1), (2), (5), (8), and (b). In addition, by orders dated and entered the same date, the court changed Children's permanency goals to adoption. Mother, through Counsel, filed timely notices of appeal and concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), which this Court consolidated *sua sponte*. The trial court filed a Rule 1925(a) opinion on October 25, 2022.

Counsel filed his petition to withdraw and *Anders* brief in this Court on December 1, 2022, which we address first. This Court has explained:

> When counsel files an *Anders* brief, this Court may not review the merits without first addressing counsel's request to withdraw. [T]his Court [has] extended the *Anders* principles to appeals involving the termination of parental rights. . . .

*In re X.J.*, 105 A.3d 1, 3 (Pa.Super. 2014) (citations omitted).

To withdraw pursuant to *Anders*, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the

record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [**Anders**] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

**Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa.Super. 2013) (**en banc**) (citation omitted).

In **Santiago**, our Supreme Court held:

[I]n the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.3d at 361.

Additionally, this Court has stated that,

[P]ursuant to **Commonwealth v. Millisock**, 873 A.2d 748 (Pa.Super. 2005) and its progeny, [c]ounsel also must provide a copy of the **Anders** brief to his client[, along with] a letter that advises the client of his right to: (1) retain new counsel to pursue the appeal; (2) proceed pro se on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the **Anders** brief.

**In re X.J.**, 105 A.3d at 4 (citation and internal quotation marks omitted).

With respect to the third requirement of *Anders*, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." *Millisock*, 873 A.2d at 752. Finally, "[o]nce counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." *In re X.J.*, 105 A.3d at 4 (citation omitted).

Instantly, Counsel filed a petition to withdraw. Counsel also filed an *Anders* brief which includes a summary of the procedural history and facts of the case with citations to the record, issues that could arguably support Mother's appeal, and Counsel's assessment regarding why the appeal is frivolous with citations to relevant legal authority. Finally, Counsel attached to his petition the letter that he sent to Mother advising of her right to retain new counsel or proceed *pro se* to pursue her appeal. Accordingly, Counsel complied with the requirements of *Anders* and *Santiago*.

We next "conduct a review of the record to ascertain if on its face, there are non-frivolous issues that counsel, intentionally or not, missed or misstated." *Commonwealth v. Yorgey*, 188 A.3d 1190, 1197 (Pa.Super. 2018) (*en banc*).

We note the standard of review in termination of parental rights cases:

> [A]ppellate courts . . . accept the findings of fact and credibility determinations of the trial court if they are

supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re J.N.M.*, 177 A.3d 937, 941-942 (Pa.Super. 2018) (citation omitted).

Section 2511 of the Adoption Act governs involuntary termination of parental rights and requires a bifurcated analysis. *See* 23 Pa.C.S.A. § 2511.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re J.N.M.,* 177 A.3d at 942 (citation omitted). In order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b). *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*).

- 10 -

In the matter at bar, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A § 2511(a)(1), (2), (5), (8), and (b). Here, we analyze the court's termination decrees pursuant to Section 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

With regard to termination of parental rights pursuant to Section 2511(a)(2), we have indicated:

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re S.C.*, 247 A.3d 1097, 1104 (Pa.Super. 2021) (quoting *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa.Super. 2015)) (internal citation omitted). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *Matter of Adoption of M.A.B.*, 166 A.3d 434, 443 (Pa.Super. 2017) (citation omitted). As such, "A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *In re S.C.*, *supra* at 1105 (citation omitted).

A careful review of the record supports termination pursuant to Section 2511(a)(2). Primarily, Children have never resided with Mother and she has never provided for their needs. Notes of testimony, 8/18/22 at 24-26, 42-46. Ms. Tillman, CUA case manager, testified that Mother actually delayed various,

unspecified services and assessments for S.C. because she refused to sign consents. *Id.* at 42.

In 2018, during S.C.'s first year of life, Ms. Tillman testified that Mother regularly attended supervised visits with S.C. *Id.* at 39. In December 2018, the trial court granted Mother twice weekly unsupervised community visits with him. *Id.* at 40-42; Order, 12/5/2018. Mother continued to visit S.C. regularly during 2019. Notes of testimony, 8/18/22 at 39. However, Ms. Tillman testified that "[Mother's] visits [] became an issue because [she] started not attending or being late to visits." *Id.* at 42. On January 6, 2020, the trial court returned Mother to supervised visits. *Id.* at 43; Order, 1/6/2020.

Thereafter, Mother gave birth to G.C. in August 2021. Ms. Tillman testified that "[d]uring the visits, [Mother] just has him in his stroller, and she's just sitting there looking at him. She's not holding him." Notes of testimony, 8/18/22 at 46. According to DHS's petition, Mother last saw G.C. in March 2022. DHS Petition, 7/25/2022, at ¶ s. In addition, with respect to Mother's visits with S.C., Ms. Tillman stated that "[h]e plays with [Mother]. [Mother] does not have -- [Mother] is not nurturing. She sits there. She argues with him. She yells at him." Notes of testimony, 8/18/22 at 39. It is unclear from the record when Mother last saw S.C. After returning to supervised visits, Mother never again achieved unsupervised community visits. *Id.* at 43.

Ms. Finley, outpatient therapist at JFK Behavioral Health, testified that Mother participated in therapy from December 2019 to December 10, 2021, for a total of twenty-six sessions over two years. *Id.* at 20. She further testified that Mother was discharged on February 4, 2022, due to Mother's lack of attendance. *Id.*

Finally, despite notice, Mother did not appear for the termination of parental rights hearing. *Id.* at 10-12. Mother contacted her counsel right before the hearing to tell him that she was not attending, stating her "health is more important than this hearing." *Id.* at 11-12. Accordingly, Counsel could not state Mother's position on the record. *Id.* at 30.

Based on the foregoing, we discern no abuse of discretion by the trial court in concluding that Mother's conduct warrants termination pursuant to Section 2511(a)(2). The record demonstrates that Mother's repeated and continued incapacity, neglect, or refusal to comply with her permanency goals, resolve her mental health issues, and provide any type of love or care to Children, has caused Children to be without essential parental care, control, or subsistence necessary for their physical and mental well-being. Further, the conditions and cause of Mother's incapacity, neglect, or refusal cannot or will not be remedied.

We turn now to Section 2511(b), which requires the court to "give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). "The emotional needs and

welfare of the child have been properly interpreted to include intangibles such as love, comfort, security, and stability." ***T.S.M.***, 620 Pa. 602, 628, 71 A.3d 251, 267 (2013) (citation and quotation marks omitted).  Our Supreme Court has made clear that Section 2511(b) requires the trial court to consider the nature and status of bond between a parent and child.  ***In re E.M.***, 620 A.2d 481, 484-485 (Pa. 1993).  It is reasonable to infer that no bond exists when there is no evidence suggesting the existence of one.  ***See In re K.Z.S.***, 946 A.2d 753, 762–763 (Pa.Super. 2008).  To the extent there is a bond, the trial court must examine whether termination of parental rights will destroy a "necessary and beneficial relationship," thereby causing a child to suffer "extreme emotional consequences."  ***In re E.M.***, 620 A.2d at 484-485.

"While a parent's emotional bond with his or her child is a major aspect of the [s]ubsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child." ***In re M.M.***, 106 A.3d 114, 118 (Pa.Super. 2014). "In addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent." ***Id***.  In determining needs and welfare, the court may properly consider the effect of the parent's conduct upon the child and consider "whether a parent is capable of providing for a child's safety and security or

whether such needs can be better met by terminating a parent's parental rights." **L.W.**, 267 A.3d 517, 524 (Pa.Super. 2021).

Furthermore, our Supreme Court has stated, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." **T.S.M.**, 71 A.3d at 268. The Court directed that, in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." **Id.** at 269. The **T.S.M.** Court observed, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." **Id.**

As related *supra*, Mother has never cared for Children. Ms. Tillman testified that Mother does not have a parental bond with Children. Regarding S.C., she testified that Mother merely "argues with him" and "yells at him." Notes of testimony, 8/18/22 at 39. Ms. Tillman further testified that when Mother visited G.C., she did not hold him and merely looked at him as he sat in the stroller. **Id.** at 46. Ms. Tillman testified that Children would not suffer irreparable harm if Mother's rights are terminated, and it is in their best interest to terminate her rights. **Id.** at 39-41, 46.

Ms. Tillman also stated that Children are bonded to their respective kinship foster parents, with whom Children have resided from the outset of their cases and are pre-adoptive resources. **Id.** at 37-48. Ms. Tillman testified

that S.C.'s kinship foster parent, J.S., provides for his daily needs and attends his doctors' appointments. *Id.* at 40. Ms. Tillman further testified that S.C. requires unspecified services because he "has some delays." *Id.* She stated that J.S. ensures that S.C. gets the services he needs and has been teaching him sign language. *Id.* at 40-41. Regarding G.C., Ms. Tillman testified that G.C. considers his kinship foster parent, S.M., to be his "mom." *Id.* at 45. Ms. Tillman stated that S.M. provides for G.C.'s daily needs, attends his doctors' appointments, and brings him to play dates. *Id.* Finally, Ms. Tillman testified that the kinship foster parents know each other, and CUA can organize sibling visits in the community to encourage a sibling relationship between Children. *Id.* at 48. Accordingly, the trial court did not err in terminating Mother's parental rights because termination was consistent with Children's developmental, physical, and emotional needs and welfare pursuant to Section 2511(b).

Our independent review of the certified record reveals no preserved non-frivolous issue that would arguably support these appeals from the decrees.

We decline to review Mother's appeals from the orders changing Children's permanency goals in light of our disposition with respect to Mother's appeals from the termination decrees. By affirming the termination decrees, Mother's appeals from the goal change orders are moot. *See In the Interest of D.R.-W.*, 227 A.3d 905, 917 (Pa.Super. 2020) ("An issue before a court is

- 17 -

moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.") (citation omitted).

Therefore, we grant Counsel's petition to withdraw from representation, affirm the decrees terminating Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2) and (b), and dismiss as moot the appeals from the orders changing Children's permanency goals to adoption.

Counsel's petition to withdraw granted. Decrees affirmed. Appeals from goal change orders dismissed as moot.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/05/2023