2025 PA Super 223

| | | |
|---|---|---|
| IN RE: A.C.E.B., JR., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: M.R.U., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 174 MDA 2025 |

Appeal from the Decree Entered January 13, 2025
In the Court of Common Pleas of Berks County
Orphans' Court at No:  88798

BEFORE:   BOWES, J., STABILE, J., and STEVENS, P.J.E.[*]

OPINION BY STABILE, J.:                    **FILED: OCTOBER 1, 2025**

M.R.U. ("Mother") appeals from the January 13, 2025, decree that involuntarily terminated her parental rights to her son, A.C.E.B., Jr. ("Child"), born in December 2016.[1]  Upon careful review, we vacate the decree and remand with instructions.

We gather the following relevant factual and procedural history of this matter from the certified record.  Berks County Children & Youth Services ("CYS") became aware of this family in November 2021 after it received a report that Child's approximately fourteen-year-old half-sibling, C.U., had not been to school in three weeks.[2]  **See** CYS Exhibit 5.  The report further stated

---

[*] Former Justice specially assigned to the Superior Court.

[1] On the same date, by separate decree, the court also terminated the parental rights of Child's biological father, A.W. ("Father").  Father did not file a separate notice of appeal or participate in the instant appeal.

[2] C.U. is not a subject of the instant appeal.

that Mother had gone to C.U.'s school while under the influence of an unknown substance and was shouting obscenities at the school principal. ***See id.***

Upon investigation by CYS, Mother admitted to domestic violence issues between her and Father. ***See id.*** Shortly thereafter, in December 2021, CYS learned that Mother tested positive for methamphetamines, amphetamines, and THC. ***See id.*** Additionally, in January 2022, Mother informed CYS that she had abused cocaine and that Father had physically assaulted her. ***See id.*** CYS instituted a safety plan in February 2022 to ensure Child's well-being. ***See id.*** However, on March 27, 2022, CYS received a report that alleged Mother became intoxicated and physically assaulted C.U. The court placed both Child and C.U. in the protective custody of CYS the following day.

On April 29, 2022, the court adjudicated Child dependent and established Child's permanency goal as reunification. In furtherance of this goal, the court ultimately ordered Mother to satisfy the following objectives, in relevant part: (1) attend supervised visitation with Child; (2) complete separate evaluations for drug and alcohol, mental health, and domestic violence and follow any and all recommendations; (3) submit to drug screens prior to every supervised visit; and (4) maintain stable and appropriate housing and income.

Permanency review hearings were held at regular intervals throughout Child's dependency. The juvenile court consistently found that Mother had achieved moderate compliance with her permanency goals. For instance,

relevant to this disposition, Mother consistently attended supervised visitation with Child for two hours every week. *See* N.T., 11/18/24, at 96. Further, at the final permanency review hearing on September 4, 2024, the court determined that Mother had made moderate progress toward alleviating the circumstances which necessitated Child's placement.

On January 2, 2024, CYS filed a petition to involuntarily terminate Mother's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b). On June 20, 2024, the orphans' court appointed Child's guardian *ad litem* ("GAL") from the dependency matter, Ashley E. Esposito, Esquire, as Child's dual GAL and legal interests counsel pursuant to 23 Pa.C.S.A. § 2313(a). At the time of the appointment, the court determined the GAL "has no conflict serving as both legal counsel and [GAL]." Order, 6/20/24 (cleaned up).

The court conducted termination hearings on November 18, 2024, and November 22, 2024. Therein, CYS presented the testimony of Alison Hill, Ph.D., a court-appointed psychologist who conducted a trauma evaluation of Child in May 2022, and a psychosexual evaluation of Child in March 2024;[3] Gerald Menaquale, who conducted an evaluation of Mother in October 2022;[4]

---

[3] The orphans' court accepted Dr. Hill as an expert in the field of "trauma evaluation" for children. N.T., 11/18/24, at 9.

[4] The orphans' court admitted Mr. Menaquale as an expert in "domestic violence, offender, and mental health evaluations." N.T., 11/18/2024, at 43.

Colleen Wisniewski, Mother's former domestic violence and mental health treatment provider; Jody George, caseworker for Open Door International, who supervised her visits with Child; and Christine Kopanski, CYS adoption caseworker. Mother testified on her own behalf and presented the testimony of Ricky Jones, her mental health therapist.

At the time of the termination hearings, Child, who was nearly eight years old, had been dependent for more than two and one-half years. He was then residing in his third foster placement, where he was placed in "late spring" 2024. N.T., 11/18/24, at 124. We gather that Child's multiple foster placements were due to behavioral issues involving sexual inappropriateness. *See id.* at 10.

By decree dated and entered on January 13, 2025, the orphans' court terminated Mother's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b). Mother timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The orphans' court filed its Rule 1925(a) opinion on March 3, 2025.

On appeal, Mother presents the following issues for review:

1. Whether [CYS] failed to prove by clear and convincing evidence that [M]other's parental rights should have been terminated pursuant to 23 Pa.C.S.[A.] § 2511(a)(1), (2), (5), and (8) since she had substantially completed her single case plan objectives as required to have her child returned to her?

2. Whether there was a strong emotional and parental bond between Mother and [C]hild which would have had a negative effect on [C]hild if the parental bond was permanently severed?

3. Whether there should have been child[-]directed counsel appointed for [C]hild where it was revealed by testimony at the end of the [contested involuntary termination of parental rights] hearing that [C]hild had expressed to parties and witnesses that he wanted to return to his mother's care and the GAL was aware of her client's wishes but argued in opposition to them?

Mother's Brief at 5 (suggested answers omitted).

Since Mother's third issue is dispositive, we will address it first. Mother argues that the decree should be vacated and the case remanded because Child was denied his statutory right to legal interests counsel during the involuntary termination proceeding. Specifically, Mother argues that the orphans' court erred in failing to appoint separate legal interests counsel pursuant to 23 Pa.C.S.A. § 2313(a) after it became clear during the hearing that Child's legal interests diverged from his best interests. *See* Mother's Brief at 20-23. Mother contends that the testimony makes clear that Child wanted to return to her care. *See id.* However, contrary to Child's wishes, the GAL advocated for termination of Mother's parental rights. *See id.* at 23. In addition, Mother asserts that "there was no discussion [on the record] about whether [Child] wanted to be adopted and what he understood about it." *Id.* at 22.

We begin by stating our standard of review:

Our Supreme Court has established that appellate review of an order granting or denying termination of parental rights requires

- 5 -

the appellate court to "accept factual findings and credibility determinations supported by the record" and "assess whether the common pleas court abused its discretion or committed an error of law." ***In re T.S.***, 648 Pa. 236, 192 A.3d 1080, 1087 (Pa. 2018) (citation omitted), *cert. denied sub nom.* ***T.H.-H. v. Allegheny Cty. Office of Children, Youth & Families***, 139 S. Ct. 1187, 203 L. Ed. 2d 220 (2019). This Court's standard and scope of review of questions of law is *de novo* and plenary. ***See id.***

***In the Interest of D.G.***, 241 A.3d 1230, 1236 (Pa. Super. 2020).

The representation of a child's legal interest is mandated by Section 2313(a), which provides the following:

> **(a) Child.--**The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian ad litem to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

***Id.***

This Court has explained as follows:

> [T]he first sentence of Section 2313(a) requires that the common pleas court appoint an attorney to represent the child's legal interests, *i.e.*, the child's preferred outcome; (b) where there is a conflict between the child's legal interests and his best interests, an attorney-[GAL], who advocates for the child's best interests, cannot simultaneously represent the child's legal interests;[fn2] and (c) in such a circumstance, the failure to appoint a separate attorney to represent the child's legal interests constitutes structural error, meaning it is not subject to a harmless-error analysis.
>
> > [fn2] The difference between legal interests and best interests is summarized in a comment to a rule governing the GAL's duties in dependency matters:

- 6 -

> "Legal interests" denotes that an attorney is to express the child's wishes to the court regardless of whether the attorney agrees with the child's recommendation. "Best interests" denotes that a guardian [*ad litem*] is to express what the guardian [*ad litem*] believes is best for the child's care, protection, safety, and wholesome physical and mental development regardless of whether the child agrees.
>
> *In re T.S.*, 192 A.3d [1080], 1082 & n.2 (citation and some footnotes omitted).

*D.G.*, 241 A.3d at 1237 (footnote in original).

This Court has explained the role of legal interests counsel, as follows:

[T]his Court has explicitly rejected the notion that child's legal counsel fulfills his or her obligations under Section 2313(a) "by discerning [the child's] preference and report[ing] it to the court[.]" *D.G.*, 241 A.3d at 1237; *see also D.N.G.*, 230 A.3d [361,] 366 [(Pa. Super. 2020)].

Indeed, this Court has stated that such a

> narrow characterization of legal counsel's duties misstates [the child's legal counsel's] obligation to his client pursuant to [Section] 2313(a). While legal representation in this context necessarily involves talking to the child client and reporting the child's preferences to the court, it is in no way limited to those two actions. To the contrary, pursuant to the majority of justices in *In re Adoption of L.B.M.*, [161 A.3d] at 180, [the child's legal counsel] was required to advocate on behalf of [the child] and provide zealous client-directed representation of [the child's] legal interests.
>
> *D.N.G.*, 230 A.3d at 366 (citation omitted); *see also In re P.G.F.*, 247 A.3d 955, 966 (Pa. 2021) (stating that "[g]enerally, an attorney acting as a child's legal counsel must, at a minimum, attempt to ascertain the child's preference and **advocate on the child's behalf**." (emphasis added)).

- 7 -

*In the Int. of H.H.N.*, 296 A.3d 1258, 1264-1265 (Pa. Super. 2023) (emphasis in original); *see also D.G.*, *supra* (vacating a termination decree where legal interests counsel failed to zealously advocate for the child); *D.N.G.*, *supra* (same).[5]

Our review of the certified record reveals significant support for Mother's arguments. Indeed, the testimony of CYS witnesses indicated that Child had expressed a clear desire to return to Mother's care. Specifically, Dr. Hill evaluated Child in March 2024, while he was residing in his second foster placement. She testified that Child "told me that he wanted to live with his mother and he wanted to stay in the foster home." N.T., 11/18/24, at 32. Thereafter, Ms. Kopanski testified that Child told her on October 15, 2024, after he had been moved to his third foster placement, that "in the event I [cannot] return to my mom, I would like to stay [with my foster family]." *Id.* at 127. Further, Ms. George testified that Child has "made comments [to Mother] during visitation that he just wants to go home with her."[6] *Id.* at 104. Mother likewise testified that Child "prefers to live with me, but he's not sure if he's allowed to yet." N.T., 11/22/24, at 173.

_____

[5] This Court has stated that "any party has standing to raise the issue of a potential conflict [with a child's legal representation] before the orphans' court or Superior Court." *In re Adoption of K.M.G.*, 219 A.3d 662, 669 (Pa. Super. 2019). Here, Mother's counsel raised the issue during the termination hearing and also in the instant appeal, so the issue was properly preserved.
[6] We note that Ms. George testified that Child "is very attached [to Mother]. He loves his mother." N.T., 11/18/24, at 104.

At the conclusion of the hearing on November 22, 2024, the GAL maintained that there was no conflict between Child's legal and best interests based upon her "ongoing contact" with Child over the course of his dependency. *Id.* at 200. However, during her closing statement, Mother's counsel argued that Child's legal interests were not adequately represented because many witnesses testified that Child opposed termination and wanted to return to Mother's care. *See id.* at 208-209. When the court requested the GAL to respond to Mother's counsel, she stated:

> [Child] has expressed that if he cannot go back to mom, he would like to stay where he is. To me and in my discussions with him, . . . I do not believe that there is a conflict between the two. It is very normal for a kid to say that even at this stage that they do still want to live with their parents, but if it's not possible, I'm okay with option b.

*Id.* at 212.

In its Rule 1925(a) opinion, the court reasoned as follows:

> As for Mother's third issue, the GAL also acted as legal counsel for Child. The GAL was of the opinion that there was no conflict between the two positions which were both presented to the court. The GAL has had ongoing contact with Child for nearly three years, **and his position is anything but firm.** (Notes of Testimony, 11/22/24, p. 200). **The court was informed of Child's wish to return home and we considered it. This Child's wants, needs and desires were fully represented in court.** At this point in time, Child likes to play with Mother and he, too, only sees the best side of her for very short periods of time. The evidence clearly shows that this is not a deeply held desire of Child, nor would there be a detriment to him if he could not return to Mother. Quite the contrary, it would not be in Child's best interest to be returned to Mother as she still has unresolved mental health issues. Therefore, we will not consider it.

*Id.* at 17 (cleaned up) (emphasis added).

In her responsive brief, the GAL concurs with the orphans' court and contends that the court fulfilled its duty by determining that there was no conflict inasmuch as she concluded that Child's statements were "not a deeply held desire." **See** GAL's Brief at 30 (citing Orphans' Court Opinion, 3/3/25, at 17). Similarly, CYS responds in its appellee brief that the court properly made a conflict determination when it initially appointed a single GAL to represent Child. **See** CYS Brief at 37. Further, CYS posits that the court again "vetted the issue" of whether Child's dual interests conflicted at the conclusion of the termination hearing. **Id.** Therefore, CYS concludes that the orphans' court properly addressed "any concern of conflict in the GAL serving in these two roles." **Id.**

Upon review, contrary to the orphans' court's finding, the GAL did not act as Child's legal interests counsel but solely advocated for the involuntary termination of Mother's parental rights. **See** N.T., 11/22/24, at 200-202. Thus, no one advocated in favor of Child's well-stated preference for reunification with Mother.

We find **D.N.G.**, **supra**, and **D.G.**, **supra**, instructive. In **D.N.G.**, this Court vacated the order involuntarily terminating the mother's parental rights to her eleven-year-old son. Separate legal interests counsel was appointed for the child, but we concluded that counsel nevertheless "neglected to advocate for his client's legal interests[,]" *i.e.*, in opposition to termination. **D.N.G.**, 230 A.3d at 365-367. Instead, counsel merely reported the child's

preference to the court. This Court determined that this *de minimis* effort did not satisfy the mandate of Section 2313(a). ***Id.*** at 367. Specifically, we emphasized that the child's legal interest counsel did not present any evidence or legal argument in his client's favor, failed to cross-examine key witnesses, and failed to "cast the most meaningful legal argument in his arsenal, *i.e.*, the probability that his soon-to-be-twelve-year-old client would refuse to consent to any contemplated adoption."[7] ***Id.*** (footnote omitted). We remanded the case to the orphans' court for a new termination hearing. ***See id.*** at 368.

***D.G.***, ***supra***, involved the teenage brother of the child in ***D.N.G.*** This Court likewise vacated the order terminating the mother's parental rights to her teenage son and remanded the case to the orphans' court for a new termination hearing. ***See D.G.***, 241 A.3d at 1242. Legal interests counsel for the child in ***D.G.*** reported to the orphans' court that "he met [c]hild at a residential facility and that . . . `[child] stated . . . he would like to live with [Mother]. However, if that's not possible, that he would be fine living with [his sibling] with the current caretaker.'" ***Id.*** at 1238-1239. Once again, this Court concluded that the child was deprived of "his statutory right to legal

---

[7] Here, because Child was eight years old at the time the orphans' court entered the termination decree, his consent would not be needed to move forward with adoption. ***See*** 23 Pa.C.S.A. § 2711(a)(1) ("consent to adoption shall be required of . . . [t]he adoptee, if over 12 years of age.").

- 11 -

counsel under Section 2313(a)." **Id.** at 1239. In making this determination, we emphasized the following:

> [T]o the extent DHS argues that [l]egal [c]ounsel properly discharged his duties by meeting with [c]hild and setting forth [c]hild's preference on the record, this Court has previously rejected similar arguments with respect to [the child's sibling]. [**See D.N.G.**, 230 A.3d at 366]. . . [W]e conclude that the concerns raised in **D.N.G.** . . . resonate strongly here because [c]hild was fifteen years old at the time of the hearing and [l]egal [c]ounsel failed to participate at all toward the end of the July 16, 2019 hearing.

**Id.**

Instantly, the testimonial evidence of Dr. Hill, Ms. Kopanski, Ms. George, and Mother, revealed that Child's legal interests and best interests conflicted. **See** N.T., 11/18/24, at 32, 104, 127; N.T., 11/22/24, at 173. Indeed, our review of the record reveals that the GAL chose to ignore the Child's stated preference by solely advocating in favor of Child's best interests. **See id.** at 200-202, 212. It follows that we conclude the orphans' court erred in failing to appoint legal interests counsel once the conflict between Child's best and legal interests became clear. **See** 23 Pa.C.S.A. § 2313(a); **see also D.G.**, **supra**.

We conclude that this case is also akin to **D.N.G.** and **D.G.** Although the siblings in **D.N.G.** and **D.G.** were each afforded separate legal interests counsel, their attorneys subsequently failed to zealously advocate in favor of their clients' wishes. **See D.G.**, 241 A.3d at 1238-39; **D.N.G.**, 230 A.3d at 367-68. Here, the GAL reported Child's opposition to termination and then

actively argued against her client's wishes by suggesting that the orphans' court ignore his preference. Accordingly, we cannot conclude that Child's legal interests were adequately represented in this case. *See D.G.*, 241 A.3d at 1239 (rejecting that legal counsel properly discharged duties by meeting with the child and setting forth the child's preference on the record).

In summary, we conclude that the failure of the orphans' court to appoint legal interests counsel for Child after his preference to return to Mother's care became clear and constituted structural error. *See* 23 Pa.C.S.A. § 2313(a); *see also H.H.N*, *supra*; *D.N.G.*, *supra*; *D.G.*, *supra*. The court's failure deprived Child of his statutory right to legal interests counsel pursuant to 23 Pa.C.S.A. § 2313(a) in this contested involuntary termination proceeding.[8]

Accordingly, we vacate the decree terminating Mother's parental rights to Child and remand the case. Upon remand, the orphans' court shall appoint separate counsel to represent Child's legal interests pursuant to 23 Pa.C.S.A. § 2313(a) and conduct a new termination hearing.

---

[8] Based on this disposition, we need not consider Mother's first and second issues on appeal.

Decree vacated. Case remanded with instructions. Jurisdiction relinquished.

Judge Bowes joins the opinion.

President Judge Emeritus Stevens notes his dissent.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/1/2025